# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DEBRA F. BROCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-129-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Debra F. Brock requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 28, 1964, and was forty-four years old at the time of the administrative hearing. (Tr. 24, 101). She completed ninth grade and earned her GED (Tr. 358), and has worked as a cashier II, pet groomer, home health aide, and bingo helper (Tr. 20). The claimant alleges that she has been unable to work since December 18, 2004, due to a back injury, shoulder injury, bad knees, and panic attacks. (Tr. 132).

## Procedural History

On January 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 9, 2009. (Tr. 12-21). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitations of

only occasionally balancing and climbing stairs, and never stooping, crouching, crawling, kneeling, or climbing ladders. Based on psychological factors, the ALJ also found that although the claimant had some limitations in her abilities to sustain concentration and to persist over extended periods of time, she could nevertheless do so satisfactorily. (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, sorter, call-out operator. (Tr. 20-21).

## Review

The claimant contends that the ALJ erred in the portion of his opinion that found the claimant not disabled: (i) by improperly evaluating the opinion of her treating physician, Dr. Steve Schoelen, and (ii) by improperly assessing her credibility. The undersigned Magistrate finds the claimant's first contention persuasive.

The ALJ found the claimant had the severe impairments of osteoarthritis of the lumbar spine and left shoulder, genu valgum ("knocked knees"), and obesity. (Tr. 14). The relevant medical evidence reveals that, following an on-the-job injury in December 2004, she underwent a shoulder surgery in January 2006. (Tr. 347-348). As part of her Workman's Compensation claim, orthopedic surgeon Dr. J. Patrick Livingston diagnosed her with discogenic syndrome based on concordant pain at L4-5 and L5-S1. (Tr. 307). In a letter to the Workers' Compensation Court, Dr. Livingston stated that there was no cure for discogenic syndrome, that her medical condition put her at a greater-than-average risk for complications if she elected for surgery, and that surgery would not "make her normal, pain-free, or able to go back to regular work." (Tr. 307-308). He

further opined, in letters from June 16, 2005 through June 2, 2006, that the claimant was temporarily totally disabled.  (Tr. 314-333).

The claimant's treating physician Dr. Schoelen completed both a mental and a physical RFC evaluation of the claimant in February 2008, indicating that he had treated her every three months since 2002.  (Tr. 378-389).  As to the claimant's lumbar spine RFC, Dr. Schoelen based his diagnoses (of lumbar degenerative disc disease, bilateral leg radiculopathy, generalized anxiety with panic attacks, and left shoulder rotator cuff tear) on MRIs of the claimant's rotator cuff tear and disc bulges.  (Tr. 378).  He noted that her prognosis was "fair," and her impairments were likely to last more than twelve months. (Tr. 378-379).  He noted that she could sit/stand only forty-five minutes each, that she could sit/stand/walk less than two hours in an eight-hour workday, that she would need a sit/stand at will option, and that she would need to take unscheduled breaks every hour for approximately fifteen minutes.  (Tr. 380).  He also noted that she had a limited range of motion, could only rarely lift weights less than ten pounds, and was limited in reaching, handling, and fingering.  (Tr. 379, 381).  As to her mental impairments, Dr. Schoelen noted that she had a generalized anxiety/panic disorder with a fair prognosis. (Tr. 383-384).  As to her ability to do work-related activities, he noted that she was seriously limited but not precluded in eleven areas, and had limited but satisfactory ability in the remaining five areas.  (Tr. 386).  Additionally, he noted that the claimant's anxiety and panic attacks were exacerbated by her back pain.  (Tr. 387).  He stated that she had marked limitations in the areas of maintaining social functioning and maintaining concentration, persistence, or pace, as well as moderate limitations in activities of daily

living and one episode of decompensation. (Tr. 388). He indicated that she was unable to function independently outside the home, and that her impairments would cause her to be absent more than four days a month. (Tr. 389).

Additionally, the claimant received treatment at Carl Albert Mental Health Center. She went once on May 5, 2004, where she was referred to a doctor for medication options, and again on March 12, 2007, when she reported depression, feelings of worthlessness, problems with coping with life on a daily basis, and inability to afford medications. (Tr. 462, 467). The clinician assigned the claimant a Global Assessment of Functioning score of 40. (Tr. 465-466).

The claimant testified at the administrative hearing that she began experiencing panic attacks in 1991, and that they have become increasingly worse since her 2004 injury and are exacerbated by stressful events such as the administrative hearing where she testified. (Tr. 30). Additionally, she stated that her anxiety mixed with her pain caused her problems with focus and concentration, including watching movies or reading. (Tr. 36). She testified that Lyrica made her short term memory problems worse, and that stopping that medication had improved but not resolved her memory problems. (Tr. 37). As to her knees, she stated that her left knee got worse after her fall in 2004, then her right knee got worse after compensating for her left knee, to the point that she experiences excruciating pain. (Tr. 32-33). As to her left side pain, she says it starts in her knees, then travels through her legs and causes numbness, and that a TENS unit offers some improvement. (Tr. 33-34).

In his written opinion, the ALJ discussed Dr. Schoelen's treatment of the claimant, then recounted his physical RFC findings, but made no mention of his mental RFC assessment. (Tr. 18-19). The ALJ referred to Dr. Schoelen's notes that the claimant was "doing well overall," and that her back pain was stable and that he had encouraged her to increase her activity level by walking, then found that the claimant was not as limited as alleged. (Tr. 18). The ALJ found Dr. Schoelen's physical RFC not persuasive and gave it little weight, because the findings were inconsistent with treatment records that the claimant was doing well overall, that she had no radicular symptoms and had good range of motion, and that she was not in acute distress. (Tr. 19). The ALJ also ignored all records from CAMHC as well as Dr. Livingston's diagnosis of discogenic syndrome and subsequent treatment notes, except to say that Dr. Livingston's opinion that the claimant was "temporarily totally disabled" was a finding reserved to the Commissioner. (Tr. 19).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the

opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Schoelen expressed such an opinion in his RFC Assessments; however, the ALJ rejected the physical RFC assessment as inconsistent with other medical evidence while failing to specify the inconsistencies to which he was referring, and in fact did not even mention Dr. Schoelen's Mental RFC assessment. *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and internal citations omitted]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Even if the opinion expressed

by Dr. Schoelen *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527, but failed to do so. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted].

Furthermore, although the ALJ was not required to give controlling weight to the opinions of Dr. Livingston that the claimant was temporarily totally disabled, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the ALJ nevertheless *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ simply stated that it was inconsistent with "examination findings and imaging." *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p,

1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ neither performed the necessary analysis nor specified the weight he was assigning to the treating physician's opinions that the claimant was disabled.

Accordingly, the Commissioner's decision should be reversed and the case should be remanded to the ALJ for further analysis of the opinions of the claimant's treating physician. On remand, the ALJ should properly analyze *all* of the evidence, re-determine whether the claimant has any severe impairments, and if so, determine her RFC based on *all* impairments—severe *and* non-severe—and the work she can perform (if any) and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma